IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DWIGHT LAMONT ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:14-CV-642 |
| | ) | |
| JAMES VAUGHAN, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Petitioner Dwight Robinson, a prisoner of the State of North Carolina, contends that his murder, assault, and robbery convictions were obtained in violation of his rights and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 2.) The respondent has filed a motion for summary judgment. (Doc. 7.)[1] For the reasons that follow, the Court will grant the respondent's motion and deny Mr. Robinson's petition.

## I. FACTUAL BACKGROUND

The State's evidence at trial tended to show that Mr. Robinson and an accomplice robbed a restaurant in High Point, North Carolina, in March 1986. *See State v. Robinson*, 330 N.C. 1, 7-8, 409 S.E.2d 288, 291-92 (1991) (hereinafter *Robinson I*). During the robbery, Mr. Robinson shot three employees, one of whom died. *See id.*

---

[1] In response to the summary judgment motion, Mr. Robinson filed a document titled "Motion to Deny Respondent's Motion for Summary Judgment, Rule 56." (Doc. 19.) Although this pleading was docketed as a motion, it is more properly characterized as a response to the summary judgment motion, and the Court will treat it as such.

## II. RELEVANT PROCEDURAL HISTORY

In September 1987, a state-court jury convicted Mr. Robinson of first-degree murder, robbery with a dangerous weapon, and two counts of assault with a deadly weapon with intent to kill inflicting serious injury, (Doc. 8-3 at 91-94), and then sentenced him to death. (Doc. 8-5 at 18.) The North Carolina Supreme Court vacated his death sentence and remanded for a new capital sentencing proceeding. *See Robinson I*, 330 N.C. at 35-36, 409 S.E.2d at 308. After a resentencing hearing in June 1992, a jury again sentenced Mr. Robinson to death. (Doc. 8-19 at 28-34.)

Days later, Mr. Robinson filed a motion for appropriate relief ("MAR") in state court, (Doc. 8-15), which the court denied on July 30. (Doc. 8-17.) In late 1993, Mr. Robinson appealed his death sentence to the North Carolina Supreme Court, (*see* Docs. 9-1 to 9-3), which the court upheld in May 1994. *See State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *superseded on other grounds by* N.C. Gen. Stat. § 15A-2002 (hereinafter *Robinson II*). The United States Supreme Court later denied certiorari review. *See Robinson v. North Carolina*, 513 U.S. 1089 (1995); (Doc. 9-8.)

In September 1995, Mr. Robinson filed a second MAR. (Docs. 9-9 to 9-15.) The parties filed pleadings, (*see* Docs. 9-16, 9-18, 9-19), but for reasons unclear from the record, the state court never issued a final ruling on the second MAR. In January 2002, Mr. Robinson filed a third MAR in state court asking the court to impose a life sentence on the grounds of mental retardation pursuant to N.C. Gen. Stat. § 15A-2005. (*See* Doc. 10-4.) After an evidentiary hearing, the court granted the motion, vacated his death sentence, and imposed a life sentence. (*See* Doc. 10-5.)

2

In February 2013, Mr. Robinson filed a pro se MAR in state court. (Docs. 10-7, 10-8.) In an August 2013 order, Superior Court Judge John Craig denied this MAR. (Doc. 10-9.) In January 2014, Mr. Robinson filed a petition for certiorari in the state appellate court, (Doc. 10-10), which the court later denied. (Doc. 10-12.)

On July 30, 2014, Mr. Robinson filed the pending petition for habeas corpus. (Doc. 2.) The respondent has moved for summary judgment. (Doc. 7.)

### III. MR. ROBINSON'S CLAIMS

In his petition, Mr. Robinson raises four claims: (1) actual innocence based on a newly discovered affidavit of his co-defendant; (2) failure to sequester the jury and improper third-party contact with the jury; (3) a *Batson* violation during jury selection and incomplete *Batson* analysis by the North Carolina Supreme Court; and (4) ineffective assistance of trial, appellate, and post-conviction counsel. (*See* Doc. 2 at 5-10.)

### IV. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). Ordinarily at summary judgment, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See id.* at 255; *see also Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Generally speaking, summary judgment applies to habeas proceedings. *See Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011); Rules Governing Section 2254 Proceedings in the United States District Courts, Rule 12.

Federal habeas courts face additional constraints when a state court has adjudicated a petitioner's claim on the merits. *See Brandt*, 636 F.3d at 132. In these circumstances, the Court must also consider the petition under the requirements in 28 U.S.C. § 2254. *See id.* If the state court adjudicated a petitioner's claims on the merits, this Court may not grant habeas relief unless the adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 409-10 (2000) (discussing § 2254(d)'s "unreasonable application" standard).

A state-court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." *Williams*, 529 U.S. at 405. A state court unreasonably applies federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or it "either unreasonably extends a legal principle . . . to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Section 2254(d) "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the

4

benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted). State-court factual determinations are presumed correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Mr. Robinson raised all four of his claims in the state court, which adjudicated and decided all four against him on the merits. Mr. Robinson raised his first, second, and fourth claims in his 2013 MAR,[2] (*see* Doc. 10-7 at 21-30; Doc. 10-8 at 3-9, 22-39), which the state court denied, (*see* Doc. 10-9 at ¶¶ 2, 3, 5); thus, that Order is subject to § 2254(d)'s deferential standard of review. A review of his third claim indicates that it arises from his 1992 resentencing, *see infra* note 8; that Mr. Robinson raised his third claim both on direct appeal, (*see* Doc. 9-1 at 79-80; Doc. 9-2 at 1-32); *see also Robinson II*, 336 N.C. at 93, 443 S.E.2d at 312, and in his MAR, (*see* Doc. 10-8 at 9-22); and that the MAR court denied this claim because it had been denied on appeal. (*See* Doc. 10-9 at ¶ 4.) The relevant state-court decision for this claim, therefore, is the North Carolina Supreme Court's opinion in *Robinson II*.[3] To the extent Mr. Robinson's third claim

---

[2] Unless otherwise noted, any subsequent reference to Mr. Robinson's "MAR," the "MAR Order," or the "MAR court" refers to Mr. Robinson's 2013 pro se MAR.

[3] Mr. Robinson contends that this Court's review should not only focus on the 2013 MAR Order, but also on "the fact that [Judge] Albright . . . ordered a hearing on [his] (1995) MAR but the order cannot be located." (Doc. 20 at 2 (internal quotation marks and citation omitted).) This contention lacks merit. It is unclear from the record whether Judge Albright held a hearing on the 1995 MAR. (*E.g.*, Doc. 9-17.) However, Mr. Robinson's 2013 MAR is virtually identical to his 1995 MAR. (*Compare* Docs. 9-9 to 9-10, *with* Docs. 10-7 to 10-8.) To the extent that Mr. Robinson contends that Judge Craig had no jurisdiction to rule on the 2013 MAR, (*see* Doc. 10-9), this argument is unavailing. *See Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) ("A

5

concerns the jury at his 1987 trial, the relevant state-court decision is *Robinson I*. *See Robinson I*, 330 N.C. at 15-20, 409 S.E.2d at 296-98.

### B. Actual Innocence

In his first claim, Mr. Robinson contends that he is "actually innocent" based on newly discovered evidence—an affidavit from George Gantt, Mr. Robinson's co-defendant in the underlying criminal case. (*See* Doc. 2 at 5; Doc. 2-1 at 10.) In that affidavit, dated March 2002, Mr. Gantt testified that: (1) he participated in the March 1986 robbery; (2) he shot the three victims; and (3) Mr. Robinson was not present during nor involved in any of the events that took place. (Doc. 2-1 at p. 10 ¶¶ 4-6.) Mr. Gantt further testified that "two other persons" participated in the robbery with him, but he does not identify them. (*See* Doc. 2-1 at p. 10 ¶ 5.) At trial, the State's evidence showed that Mr. Gantt participated in the robbery with Mr. Robinson. (*E.g.*, Doc. 14-2 at 112-18; Doc. 14-5 at 78-79; Doc. 14-6 at 45-48; Doc. 14-7 at 31-32.)

North Carolina law authorizes relief via MAR based on newly discovered evidence showing actual innocence if the defendant establishes that: (1) the "witness or witnesses will give newly discovered evidence;" (2) the "evidence is probably true;" (3) the evidence is "competent, material and relevant;" (4) "due diligence was used and

---

state prisoner has no federal constitutional right to post-conviction proceedings in state court. Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." (internal citations omitted)).

Though, a review of his arguments in light of the record indicates that Mr. Robinson's *Batson* claim concerns the jury at his 1992 resentencing, in which case *Robinson II* is the relevant state-court decision under § 2254(d). *See infra* note 8. Also, to the extent Mr. Robinson's *Batson* claim concerns the jury at his 1987 trial, the relevant state-court decision is *Robinson I*. *See Robinson I*, 330 N.C. at 15-20, 409 S.E.2d at 296-98.

proper means were employed to procure the testimony at the trial;" (5) the "evidence is not merely cumulative;" (6) the evidence does not tend only to contradict, impeach, or discredit a former witness; and (7) the evidence "is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail." *State v. Britt*, 320 N.C. 705, 712-13, 360 S.E.2d 660, 664 (1987), *superseded on other grounds by* N.C. Gen. Stat. § 15A-2004(a), (b). In the MAR Order, Judge Craig cited *Britt* and held that "[t]he Court does not find Mr. Gantt's predicted testimony to be 'probably true,' to be 'competent,' or 'of such a nature as to show that on another trial a different result will probably be reached,' or 'likely would have resulted in a determination that [Mr. Robinson] was not guilty of the crimes charged.'" (Doc. 10-9 at ¶ 2.)

To the extent Mr. Robinson alleges that the state court erred in applying N.C. Gen. Stat. § 15A-1420(c)(1) in failing to hold an evidentiary hearing or in applying *Britt*'s seven-factor test, (*see* Doc. 20 at 3-4), he is not entitled to review by this Court because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also McNeill v. Branker*, 601 F. Supp. 2d 694, 703-04 (E.D.N.C. 2009) ("Claims based on state court rulings on state-law questions are only cognizable on federal habeas review if they violate specific constitutional provisions or are so egregious they render the entire trial fundamentally unfair.").

Moreover, under the highly deferential standard of habeas review, a state court's factual findings are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1). Mr. Robinson

has identified no findings in the MAR Order related to this "new evidence" that are contrary to established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. *See id.* § 2254(d).

Mr. Robinson also appears to contend that he is entitled to habeas relief because he is actually innocent based on Mr. Gantt's affidavit. (*See* Doc. 20 at 3-4.) While the Supreme Court has not definitively rejected stand-alone habeas claims based on actual innocence, it seems unlikely one exists.[4] Even if actual innocence does constitute an independent basis for habeas relief, the Supreme Court "has made clear that the threshold for any hypothetical freestanding innocence claim is extraordinarily high." *Teleguz v. Pearson*, 689 F.3d 322, 328 n.2 (4th Cir. 2012) (internal alteration and quotation marks omitted) (quoting *House v. Bell*, 547 U.S. 518, 555 (2006)). Assuming *arguendo* that a freestanding actual-innocence claim is cognizable, Mr. Robinson has not met this burden.

Mr. Gantt's affidavit falls far short of persuasively demonstrating Mr. Robinson's innocence. Courts are generally wary of after-the-fact exculpatory statements from co-defendants. *See Cagle v. Branker*, 520 F.3d 320, 325 (4th Cir. 2008) (collecting cases). When he signed the affidavit, almost fifteen years after the trial in this matter, (*see* Doc. 2-1 at 10; Doc. 8-3 at 91-94), Mr. Gantt was in prison for the same crimes for which Mr. Robinson was facing the death penalty. (*See* Doc. 2-1 at p. 10 ¶¶ 1-3.) Mr. Gantt did not

---

[4] *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Other courts have explicitly held that such claims may not be brought in a habeas proceeding. *See, e.g.*, *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation." (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (same).

8

identify the persons he claimed participated in the robbery with him. (*See* Doc. 2-1 at p. 10 ¶ 5.) At trial, the two surviving victims identified Mr. Robinson in court as the man who shot them. (*See* Doc. 14-6 at 22-27, 47-55; Doc. 14-11 at 47-53, 66-72); *see also Robinson I*, 330 N.C. at 8, 22-23, 409 S.E.2d at 291, 300. Another co-defendant, Thomas Wood, testified that he drove Mr. Robinson and Mr. Gantt to the scene of the robbery, drove with them to Maryland the next day, and later confessed his involvement in the crime to his employer. (*See* Doc. 14-2 at 49, 91-120; Doc. 14-3 at 1-15, 25-29); *see also Robinson I*, 330 N.C. at 8, 23, 409 S.E.2d at 291-92, 300. Another witness testified that he saw Mr. Robinson driving a new car days after the robbery and that Mr. Robinson told him "he got the car with the money that he got from the robbery." (*See* Doc. 14-13 at 84-88.)

In the face of this strong evidence of Mr. Robinson's guilt, Mr. Gantt's affidavit fails to establish actual innocence.[5] The Court will deny this first ground for relief.

### C. Failure to Sequester the Jury and Improper Jury Contact

---

[5] To the extent Mr. Robinson seeks an evidentiary hearing on this claim, the Court will deny that request. The state courts have already rejected this new evidence of actual innocence, finding that it lacked credibility. (*See* Doc. 10-9 at ¶ 2.) This factual finding is entitled to a presumption of correctness by federal habeas courts. *See* 28 U.S.C. § 2254(e)(1); *see also Harrington*, 562 U.S. at 102-03; *Ellis v. Collins*, 956 F.2d 76, 79-80 (5th Cir. 1992) (per curiam) (holding that a state court's determination that affidavits lacked credibility was entitled to a presumption of correctness in federal habeas proceedings). Based on Mr. Gantt's affidavit, signed almost fifteen years after the crimes, as compared to the multiple witnesses who testified at trial to Mr. Robinson's involvement in the crimes, the Court finds no basis to disturb the state court's conclusion. In any event, none of the reasons for holding an evidentiary hearing apply, *see Fullwood v. Lee*, 290 F.3d 663, 681 & n.7 (4th Cir. 2002), and summary judgment is appropriate as to this claim. *See Maynard v. Dixon*, 943 F.2d 407, 411-12 (4th Cir. 1991).

In his second claim, Mr. Robinson contends that the trial court failed to properly sequester his jury and that there was improper third-party contact with the jury.[6] (Doc. 2 at 7; *see also* Doc. 20 at 4.) The decision to sequester a jury is in the trial court's discretion. N.C. Gen. Stat. § 15A-1236(b); *see also State v. Wilson*, 322 N.C. 117, 127, 367 S.E.2d 589, 595 (1988). To the extent Mr. Robinson contends that the trial court abused its discretion in deciding not to sequester the jury, that is a matter of state law and any claim alleging error in such a decision is not cognizable in a federal habeas proceeding. *See Estelle*, 502 U.S. at 67-68.

To the extent Mr. Robinson contends that his due process rights were violated by the failure to sequester, he has failed to demonstrate how the lack of sequestration prejudiced him and has offered no evidence to support this claim. The trial judge gave the jury suitable instructions as to their conduct given potential trial publicity. (*See* Doc. 14-2 at 35-37.) The state court's decision against Mr. Robinson, (*see* Doc. 10-8 at 3; Doc. 10-9 at ¶ 3), is entitled to deference, *see Cullen*, 131 S. Ct. at 1398, and Mr. Robinson has shown no lack of fundamental fairness as would violate his due process rights. *Cf. Bowman v. Bordenkircher*, 522 F.2d 209, 210-11 (4th Cir. 1975).

Mr. Robinson also contends that he did not receive a fair trial because of improper third-party contact with jury members. (Doc. 2 at 7; *see also* Doc. 20 at 4.) He alleges that during his 1987 trial, several jurors were approached at lunch by "a member of the public" who "said the jury 'ought to burn him'" and that a waiter at the restaurant

---

[6] Mr. Robinson also appears to contend that the jury was "biased" based on the exclusion of potential black jurors. (*See* Doc. 2 at 7.) Because this claim is more properly raised in connection with Mr. Robinson's *Batson* claim, it will be discussed later. *See* discussion *infra*.

"expressed [to the jurors] the hope that the jury 'would do the right thing.'" (Doc. 2-1 at p. 32 ¶ 3; *see also* Doc. 2 at 7.)

The Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (internal quotation marks omitted). "The Supreme Court has clearly stated that private communications between an outside party and a juror raise Sixth Amendment concerns." *Fullwood v. Lee*, 290 F.3d 663, 677 (4th Cir. 2002) (citing *Parker v. Gladden*, 385 U.S. 363, 364 (1966) (per curiam)). The introduction of prejudicial extraneous influences into the jury room constitutes misconduct that may result in the reversal of a conviction. *E.g.*, *Parker*, 385 U.S. at 364-66.

Third-party contact with a jury is "presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954). Prejudice is presumed—and a defendant is entitled to a hearing—"when the defendant presents a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury." *Barnes v. Joyner*, 751 F.3d 229, 242 (4th Cir. 2014), *petition for cert. filed*, No. 14-395 (U.S. Oct. 6, 2014); *see also Hurst v. Joyner*, 757 F.3d 389, 395 n.3 (4th Cir. 2014), *petition for cert. filed*, No. 14-395 (U.S. Oct. 6, 2014). However, a mere allegation of jury interference is not enough to require an evidentiary hearing, much less relief. *See Barnes*, 751 F.3d at 242; *see also Brown v. Finnan*, 598 F.3d 416, 424-25 (7th Cir. 2010) (collecting cases and holding that the defendant's allegation of improper out-of-court statements did not warrant a *Remmer* hearing).

11

The MAR court found that Mr. Robinson did "not allege sufficient factual allegations of the improper jury contact as to allow [the court] to give relief" because "the alleged hearsay statement of an anonymous waiter at an unmentioned restaurant is so attenuated from an evidence standpoint that it is of no consequence whatsoever." (Doc. 10-9 at ¶ 3.) This Court must determine whether that decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d).

Mr. Robinson has identified no case in which a court has found unsworn statements by unidentified jurors made almost ten years after a trial about statements made on an unspecified date at an unspecified location to unidentified jurors by unidentified third-parties as sufficient to establish a credible allegation of improper jury contact. There are no affidavits from any juror or anyone else who could have first-hand knowledge of the alleged statements.[7] This evidence stands in marked contrast to that in *Remmer* and its progeny, where the testimony presented was from the jurors themselves or witnesses to or participants in the alleged improper contact. *See Remmer*, 350 U.S. at 380-81 (juror reported improper communication); *Hurst*, 757 F.3d at 392 (juror reported that she sought religious guidance from her father on her decision on a proper sentence); *Barnes*, 751 F.3d at 235-36 & n.6 (juror signed an investigator's summary of her statement, and investigators reported statements from specific, named jurors).

---

[7] The alleged statements made to jurors are before the court in an affidavit Mr. Robinson attached to his petition. (*See* Doc. 2-1 at 32-33.) The affiant is an individual who interviewed jurors in 1995 on behalf of an attorney, and he does not give the names of the jurors or third parties who allegedly made the statements. (*See* Doc. 2-1 at 32-33.)

12

Mr. Robinson has failed to present credible, admissible evidence that the extrajudicial communications occurred or that suggests the jury was improperly influenced by the alleged statements. As such, there is insufficient evidence to invoke the *Remmer* presumption of prejudice, and he is not entitled to a hearing. *See Barnes*, 751 F.3d at 242. The MAR court did not reach a result contrary to, or involving an unreasonable application of, clearly established federal law, nor is the MAR court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). The Court will deny Mr. Robinson's second ground for relief.

**D. *Batson* Claim**

In his third claim, Mr. Robinson appears to allege that, at his resentencing proceeding,[8] the State exercised its preemptory strikes in a discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (*See* Doc. 2 at 7-8.) He further contends that the North Carolina Supreme Court did not properly review his *Batson* claims. (Doc. 2 at 8.)

In his petition, Mr. Robinson alleges that "the State improperly excluded potential black jurors resulting in a biased jury." (Doc. 2 at 7); *see also supra* note 6. Nowhere does Mr. Robinson name or describe any specific juror whose exclusion he challenges.

---

[8] On the face of his petition, it is not clear whether Mr. Robinson's allegations concern the jury at his 1987 trial or the jury at his 1992 resentencing proceeding. (*See* Doc. 2 at 7-8; Doc. 10-8 at 9-14.) However, a review of his arguments in light of the record, including the affidavit of a law student who interviewed an unnamed juror, (Doc. 2-2 at 2-3), the court's *Batson* analysis in *Robinson I*, *see Robinson I*, 330 N.C. at 15-20, 409 S.E.2d at 296-98, and *Robinson II*, *see Robinson II*, 336 N.C. at 93-99, 443 S.E.2d at 312-15, and the voir dire in Mr. Robinson's 1992 resentencing, (*see* Doc. 15-10 at 37, 74-76, 86), indicates that Mr. Robinson is challenging the State's exclusion of a juror at his 1992 resentencing.

(*See* Docs. 2, 18, 20.) He relies only on an affidavit from a law student who interviewed one unnamed juror from an unspecified proceeding. (*See* Doc. 2-2 at 2-3.)

Mr. Robinson is not entitled to any relief based on this alleged error. First, he has not shown that the state court's adjudication of this issue "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); *see Allen v. Lee*, 366 F.3d 319, 328 (4th Cir. 2004) (en banc) (per curiam). In any event, the alleged error occurred at his resentencing proceeding, where the only issue was punishment, after which the jury sentenced Mr. Robinson to death. (*See* Doc. 8-19 at 28-33.) This sentence was later vacated, and Mr. Robinson is now serving a life sentence. (*See* Doc. 10-5.) Any error in the capital resentencing proceeding obviously had no effect on the guilty verdict in the previous trial.[9] *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (stating that a petitioner is not entitled to habeas relief unless the alleged error had "substantial and injurious effect or influence in determining the jury's verdict" (internal quotation marks and citation omitted)); *Barnes*, 751 F.3d at 239 ("[B]efore a federal court grants habeas relief, it must conclude that the state court's constitutional error 'actually prejudiced' the habeas petitioner.").

To the extent Mr. Robinson's petition can be read to challenge the exclusion of a juror at his 1987 trial, the North Carolina Supreme Court decided this claim against him on direct appeal. *See Robinson I*, 330 N.C. at 15-20, 409 S.E.2d at 296-98. The court

---

[9] The Court does not mean to imply that there was error. Indeed, the Court's review indicates that there was no *Batson* violation, much less an unreasonable application of clearly established federal law by the North Carolina Supreme Court. However, a lengthy analysis is unnecessary given the lack of prejudice to Mr. Robinson.

14

discussed each black juror the State struck and the State's reasons for each: three potential jurors failed to reveal past criminal histories, one did not admit she knew a witness, and one had previously testified against the State in a manslaughter case. *See id.* at 17-19, 409 S.E.2d at 297-98. The court concluded that the State met its burden under the second prong of *Batson* in providing "neutral, nonracial explanations for each peremptory challenge." *See id.* at 19, 409 S.E.2d at 298; *see also Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) (summarizing *Batson*'s three-prong test). The *Robinson I* court's decision regarding Mr. Robinson's *Batson* challenges did not result in a decision that "was contrary to, or involved an unreasonable application of, clearly establish Federal law." *See* 28 U.S.C. § 2254(d)(1); *see also Hernandez v. New York*, 500 U.S. 352, 360 (1991) ("Unless a discriminatory intent is inherent in the prosecutor's explanation [for striking a potential juror], the reason offered will be deemed race neutral."). The Court will deny Mr. Robinson's third ground for relief.

### E. Ineffective Assistance of Counsel

In his fourth claim, Mr. Robinson asserts that he received ineffective assistance of counsel at trial, on appeal, and in post-conviction proceedings. (Doc. 2 at 10.) To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and but for counsel's deficient performance, there was a reasonable probability of a different result. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Courts "must be highly deferential" in evaluating counsel's performance and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel "made all significant

15

decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. To overcome that presumption and establish deficient performance, a petitioner "must show that counsel failed to act reasonably considering all the circumstances." *Cullen*, 131 S. Ct. at 1403 (internal alteration and quotation marks omitted).

A federal court may only grant habeas relief if the state court unreasonably applied *Strickland*'s ineffective-assistance standard. *See Harrington*, 562 U.S. at 105; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Moore v. Hardee*, 723 F.3d 488, 496 (4th Cir. 2013). "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). Thus, the question for a federal habeas court "is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Mr. Robinson contends that North Carolina Prisoner Legal Services failed to file a MAR for him. (Doc. 2 at 10.) This claim is not cognizable on federal habeas review because there is no right to post-conviction counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991), *abrogated on other grounds by Martinez v. Ryan*, 132 S. Ct. 1309 (2012). The fact that Mr. Robinson, as a capital defendant, was entitled to post-conviction counsel at his initial post-conviction proceeding is immaterial. (*See* Doc. 20 at 5.) Section 2254(i) plainly states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Martel v. Clair*, 132 S. Ct. 1276, 1287 n.3 (2012). Moreover, Mr. Robinson has not

16

pointed to any specific deficient conduct by his post-conviction counsel. *See United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (holding that "airy generalities" and "conclusory assertions" of ineffective assistance will not "stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing").

Similarly, Mr. Robinson has failed to direct the Court to any specific deficiency on the part of his appellate counsel. (*See* Doc. 2 at 10; *see generally* Docs. 18, 20.) To the extent Mr. Robinson has asserted a claim for ineffective assistance of appellate counsel, this claim also fails. *See Roane*, 378 F.3d at 400-01.

Next, Mr. Robinson states that his "[t]rial counsel failed to challenge [the] contents of [a] photographic lineup, no [written] motions to suppress filed, only oral motions made." (Doc. 2 at 10.) Mr. Robinson's trial counsel did orally object to the photographic line-up and the in-court identifications of Mr. Robinson by the two surviving victims on the ground of improper pretrial identification procedures. (*See* Doc. 14-6 at 3-7.) The trial court overruled that objection and found that the pretrial identification procedures were not "suggestive or conducive to mistaken identification." (*See* Doc. 14-6 at 14-21); *see also Robinson I*, 330 N.C. at 27-29, 409 S.E.2d at 303-04. The North Carolina Supreme Court found no error in the trial court's denial of the motions to suppress the in-court identifications. *See Robinson I*, 330 N.C. at 28-29, 409 S.E.2d at 304. The trial court noted that counsel did not file any written motions to suppress the evidence at issue, (*see* Doc. 14-6 at 5-6), and had therefore waived the right to move to suppress some of this evidence, (*see* Doc. 14-6 at 18), but found, in the alternative, that the pretrial identification procedures were proper. (*See* Doc. 14-6 at 14-

17

Case 1:14-cv-00642-CCE-JLW   Document 22   Filed 05/01/15   Page 17 of 20

21.) Therefore, trial counsel's failure to file written motions to suppress did not result in prejudice, as there is no reasonable probability of a different result had counsel filed written motions. *See Strickland*, 466 U.S. at 687, 694.

Mr. Robinson also contends that trial counsel was ineffective in "fail[ing] to elicit testimony from Dr. Cole about his experiments at trial described in voir dire." (Doc. 2 at 10 (emphasis omitted).) The MAR court denied this claim, finding that Mr. Robinson failed to establish either prong under *Strickland*. (*See* Doc. 10-9 at ¶ 5.)

Dr. Cole was an expert witness for the defense who testified on the weaknesses of eyewitness testimony. (*See* Doc. 14-15 at 3, 29; Doc. 14-16 at 8-15.) During his testimony before the jury, the court sustained several objections by the State, thus limiting Dr. Cole's testimony on his experiments and opinions on the accuracy of eyewitness identification, specifically, errors in "cross race identification." (*See* Doc. 14-16 at 5-13; *see also* Doc. 14-15 at 15-19.) To the extent Mr. Robinson contends that his trial counsel was ineffective for failing to elicit testimony from Dr. Cole, he cannot show deficient performance or prejudice, *see Strickland*, 466 U.S. at 687; his lawyer attempted to do exactly what Mr. Robinson says he should have done.[10]

To the extent Mr. Robinson contends that trial counsel was ineffective for not asking Dr. Cole other questions, (*see* Doc. 2 at 10), this claim also fails. First, he has not proffered any evidence that this failure was unreasonable. *See Strickland*, 466 U.S. at 689-91. Mr. Robinson has not shown what this other evidence was or explained how his

---

[10] To the extent Mr. Robinson contends that the trial court improperly sustained the State's objections to this testimony, (*see* Doc. 18 at 2), this Court may not review the state court's interpretation and application of state rules of evidence. *See Estelle*, 502 U.S. at 67-68.

18

attorney failed to elicit it. Second, Mr. Robinson has failed to show that counsel's failure to elicit further testimony from Dr. Cole was prejudicial. *See Strickland*, 466 U.S. at 687, 694. The record shows that the two surviving victims, who had face-to-face contact with Mr. Robinson during the robbery, (*see* Doc. 14-6 at 22-55; Doc. 14-11 at 47-72), selected him from a photographic lineup and a physical line-up specifically requested by defense counsel. (*See* Doc. 14-7 at 28-31; Doc. 14-11 at 81-90; *see also* Doc. 14-5 at 86-89; Doc. 14-9 at 83-88; Doc. 14-6 at 7-21.) Both victims identified Mr. Robinson at trial. (*See* Doc. 14-6 at 52-54; Doc. 14-11 at 52-56, 70-71.) Defense counsel had the opportunity to address concerns about misidentification through cross-examination and closing argument. (*E.g.*, Doc. 14-7 at 57-70; Doc. 14-12 at 5-20; Doc. 15-2 at 24-25, 51-52.)

In these circumstances, the Court gives deference to counsel's strategic decisions regarding Dr. Cole's direct examination and finds that counsel's representation did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688-90. The MAR court's adjudication of Mr. Robinson's ineffective assistance claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

Finally, to the extent Mr. Robinson contends that counsel provided ineffective assistance at his capital resentencing hearing in failing to raise a *Batson* challenge, (*see* Doc. 20 at 5), this claim fails. Because the jury's death sentence at that hearing was later vacated, *see* discussion *supra*, Mr. Robinson cannot establish the prejudice required by *Strickland*. *See Strickland*, 466 U.S. at 687, 694.

## V. CONCLUSION

Mr. Robinson has failed to establish that the decisions of the North Carolina state courts were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or that the state courts' decisions were based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Therefore, the Court will grant the respondent's motion for summary judgment. (Doc. 7.)

For the reasons stated herein, it is **ORDERED** that the respondent's motion for summary judgment, (Doc. 7), is **GRANTED** and the petition is **DISMISSED**. To the extent Mr. Robinson's response to the motion for summary judgment constitutes a motion, (Doc. 19), that motion is **DENIED**. The Court finds no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, and a certificate of appealability is **DENIED**.

This the 1st day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE